UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | NO. 2:12-CR-67 |
| | ) | |
| LARRY SHANE MORGAN | ) | |

## REPORT AND RECOMMENDATION

Defendant was arrested on July 3, 2012, in the parking lot at the Fox Motel in Johnson City, Tennessee. He argues there was no probable cause, or even reasonable suspicion, to detain him prior to his arrest, as a result of which all evidence flowing directly or indirectly from his arrest should be suppressed. (Docs. 86 and 92). An evidentiary hearing was held on September 27, 2012.

The facts surrounding defendant's apprehension and arrest on July 3, 2012 reveal a combination of excellent police work, a bit of good luck on the part of police, and – from defendant's perspective – some very bad decisions made by him.

On July 2, 2012, Greeneville Federal Bank in Greeneville, Tennessee was robbed. The robber not only was armed with a handgun, he discharged his weapon inside the bank to persuade the tellers that he meant business. Officers of the Greeneville Police Department promptly responded to the bank, and were told by a witness that the armed robber drove away in a newer model Chevrolet pickup truck, black, with damage to the passenger side. Shortly thereafter, this information was disseminated to surrounding law enforcement agencies, including the Johnson City Police Department.

Later that day, the Greeneville Police heard of a truck located in Greene County that might be the one they were looking for. However, when officers saw the truck, they knew that it was not

involved in the robbery. It was an older model Chevrolet truck, not a newer model. And, it had no damage.

On the following day, July 3, an officer with the Johnson City Police Department saw a truck in the parking lot of the Fox Motel in Johnson City that matched the description of the truck involved in the robbery. He called his dispatcher to so report, and he also reported the tag number on that vehicle. A records check on the tag number of that truck revealed that it was registered to two people, one of whom was Larry Shane Morgan. That same records check also revealed that Mr. Morgan's truck had been involved in a vehicle accident a few days earlier in Greeneville, and that the truck sustained the same damage as described by the bank employee. The officer also requested a criminal records check on Larry Shane Morgan, and he was told that Mr. Morgan was a convicted felon. He also received a digitalized photograph of Mr. Morgan.

Ultimately, all the foregoing information – the description of the truck, the damage to the truck, the identity of the owner, Mr. Morgan's criminal record, and the photograph of Mr. Morgan – was communicated to Detective Pat Hankins of the Greeneville Police Department. Detective Hankins and Captain Beth Dykes of the Greeneville Police Department drove to the Fox Motel that morning, where they met officers of the Johnson City Police Department. The Chevrolet pickup truck was still there.

Captain Dykes and another police officer walked to the motel office to ask management to call Mr. Morgan's room and ask him to come down to meet with the officers. Detective Hankins and other officers stood beneath a stairway that led to the second floor. Before anyone called Mr. Morgan's room, Detective Hankins saw Mr. Morgan walking down the steps from the second floor. He was carrying a plastic shopping bag.

2

Detective Hankins met defendant at the bottom of the stairway, and asked him his name and what vehicle he was driving. Defendant provided a name other than "Larry Shane Morgan." This understandably heightened the detective's suspicions since he had a photograph of Mr. Morgan and fully well knew at that time that his name really was Larry Shane Morgan. Detective Hankins asked Morgan if the black truck was his, and Morgan responded that it was not. Again, it must be pointed out that Detective Hankins already knew the answer to the question; the truck was registered to Morgan.

Detective Hankins then asked defendant for identification. Morgan responded that his identification was in his vehicle. Detective Hankins then asked defendant which vehicle was his, and defendant vaguely pointed in the direction of two vehicles in the parking lot, neither of which was the truck which Detective Hankins already knew belonged to defendant. Moreover, one of the two vehicles to which defendant pointed belonged to Detective Hankins.

Detective Hankins told Morgan he would walk with him to Morgan's vehicle so that he could retrieve his identification, and they started walking in the direction to which Mr. Morgan had pointed.[1] As they walked, Detective Hankins again asked which of the vehicles belonged to Mr. Morgan. This time, Mr. Morgan chose particularly badly, and he pointed specifically to Detective Hankins' car. Probably realizing almost immediately that this ruse was within a matter of seconds of coming to a bad end, Morgan suddenly bolted and ran. Detective Hankins was close enough to Morgan that the foot chase lasted only a few feet, and Detective Hankins and Morgan wrestled with one another. Captain Dykes, who was in the motel office, saw the fight, and she came out to assist.

---

[1] Detective Hankins had every right to ask to see some identification. *See, e.g., Hiibel v. Sixth Judicial District Court of Nevada, etc.*, 542 U.S. 177 (2004).

Morgan was quickly subdued and handcuffed. Morgan was lying face down, with the plastic bag he had been carrying beneath him. When the officers rolled him over to lift him from the ground, the contents of that bag were clearly visible: currency, and a lot of it.

If a law enforcement officer has "reasonable suspicion" based on articulable facts that criminal activity has occurred or is about to occur, that officer may stop and briefly detain a person for investigative purposes. This, of course, is the so-called *Terry*-stop, *Terry v. Ohio*, 392 U.S. 1 (1968). The facts of this case provide a classic example of a *Terry* investigative stop:

(1) the robber fled in a newer model, black, Chevrolet pickup truck with damage to the right side;

(2) a vehicle matching that description was seen the next morning in the parking lot of the Fox Motel;

(3) a records check revealed that that vehicle was registered to Larry Shane Morgan, that he was a criminal, and that the vehicle had been involved in a wreck a few days earlier in Greeneville, sustaining the damage as described by the witness.

At this point, there was certainly reasonable suspicion, based on articulable facts, for the officers to at least speak to the driver of that vehicle. To have failed to do so would have been a dereliction of a competent law enforcement officer's responsibility.

The reasonable suspicion begins to exponentially escalate at this point due to a series of unimaginative lies uttered by Mr. Morgan:

(4) when asked by Detective Hankins his name, Morgan gave a false name;

(5) Detective Hankins already knew who Morgan was, and obviously knew that Morgan had just lied;

4

(6) Detective Hankins asked Morgan if the black Chevrolet truck was his, and Morgan stated that it was not. Again, Detective Hankins knew that to be a lie;

(7) when Detective Hankins asked which vehicle was his, Morgan pointed out Hankins' vehicle, which Hankins understandably recognized to be a lie.

At this point, "reasonable suspicion" had metamorphosed into something just shy of probable cause, if it had not already reached that point. But, as if to put icing on the probable cause cake, Mr. Morgan bolted and ran. At that point, the officers were justified in subduing him. *Illinois v. Wardlow*, 528 U.S. 119 (2000). As if anything else was needed, when defendant was lifted off the ground a bag full of money was observed.

Defendant's motion to suppress is all-inclusive: he asks that any and all evidence that flowed directly or indirectly from his arrest in the Fox Motel parking lot be suppressed. In the opinion of the court, nothing about defendant's contact with the police, including his arrest on July 3, 2012 in the Fox Motel parking lot, violated the Fourth Amendment to the United States Constitution, as a result of which it is respectfully recommended that defendant's motion to suppress, (Doc. 86, and as supplemented by Doc. 92), be denied.[2]

Respectfully submitted,

s/Dennis H. Inman
United States Magistrate Judge

---

[2] Any objections to this report and recommendation must be filed within fourteen (14) days of its service or further appeal will be waived. 28 U.S.C. § 636(b)(1).